**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUNG H. MO, | |
|     **Plaintiff,** | |
|     v. | Civ. No. 20-14387 (KM) (ESK) |
| JPMORGAN CHASE BANK, N.A., U.S.BANKCORP, TIAA BANK, and WELLS FARGO BANK, | **OPINION** |
|     **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Sung Mo has a mortgage owned by U.S. Bank, serviced by TIAA Bank, and "invested in" by Wells Fargo Bank (collectively, along with JPMorgan Chase Bank, "Defendants"). After Defendants allegedly misled Plaintiff about required mortgage payments, U.S. Bank brought a foreclosure action in New Jersey court, resulting in summary judgment in May 2018 in its favor. In this Court, Plaintiff asserts contract, consumer-protection, and other claims against Defendants arising from their actions that purportedly led to his default. Defendants move to dismiss, arguing that the Second Amended Complaint fails to state a claim, *see* Fed. R. Civ. P. 12(b)(6). (DE 62, 63.)[1] For the following reasons, the motions to dismiss are **GRANTED**.

---

[1]     Certain citations to the record are abbreviated as follows:

"DE" refers to the docket entry numbers in this case

"2AC" refers to the Second Amended Complaint (DE 50)

"JPMorgan MTD" refers to JPMorgan Chase Bank's Brief in Support of its Motion to Dismiss (DE 62-1)

"Defs. MTD" refers to the Brief in Support of TIAA Bank, Wells Fargo Bank, and U.S. Bank's Motion to Dismiss (DE 63-1)

## I.   BACKGROUND

As outlined in my prior opinion dismissing his First Amended Complaint, Plaintiff bought real property in Totowa, New Jersey ("the Totowa property") with the aid of a mortgage that he obtained from Bank of New York Mortgage Company, LLC ("BNY") in 2005. (2AC ¶¶ 2, 20-21.) BNY assigned the mortgage in 2012 to an adjustable-rate mortgage trust over which U.S. Bank was trustee.[2] (*Id.* ¶¶ 3, 4; Defs. MTD at 2-3.) TIAA is the current mortgage servicer while Wells Fargo "was the investor" in the mortgage as of 2018.[3] (2AC ¶¶ 5, 6.)

Plaintiff claims that "[e]ach and every Defendant[]" participated in a "deceitful scheme" to cause him to default on his mortgage (*id.* ¶ 19, 68, 73), but alleges facts only as to the conduct of BNY,[4] Wells Fargo, and U.S. Bank. According to his Second Amended Complaint, Plaintiff executed a loan modification agreement with BNY in November 2013. (*Id.* ¶ 22-23.) He noticed in January 2014 that a mortgage payment "had not been processed from his bank account," so he contacted BNY, which "unilaterally" placed him into a "verbal[5] temporary repayment plan" that required him to make payments in different amounts than those required under the 2013 loan modification agreement. (*Id.* ¶¶ 24-26, 37, 41.) Plaintiff maintains that he complied with

---

[2]     This assignment erroneously named JPMorgan Chase Bank as the mortgage servicer, an error that was corrected in 2016. (JPMorgan MTD at 3; Defs. MTD at 2-3.) Accordingly, JPMorgan Chase Bank argues that it has been erroneously named in this action, given that it has no actual interest in the mortgage loan at issue. (JPMorgan MTD at 2-3.)

[3]     However, the Second Amended Complaint is less than clear as to the timeline or varying roles of Defendants in Plaintiff's mortgage loan, later stating that Wells Fargo was also the mortgage's owner as of 2018. (2AC ¶ 49).

[4]     Plaintiff states that, at the time Plaintiff obtained the mortgage, "BNY Mortgage was owned by Everbank Financial Corporation, BNY's partner in the joint venture. Everbank was TIAA's former banking division." (2AC ¶ 5.) Thus, Plaintiff appears to treat allegations against BNY as attributable to TIAA without further explanation. For the purposes of this motion, I do not attempt to disentangle BNY and TIAA's relationship but note that Plaintiff's pleading on this point is clearly wanting.

[5]     The sense seems to be that this was an oral arrangement, as opposed to a written one. I will use Plaintiff's terminology.

these requests, sending mortgage payments to BNY in February, March, and April 2014 pursuant to this verbal repayment plan, and in May 2014 was allegedly told by BNY that the verbal repayment plan was "complete." (*Id.* ¶¶ 27-33.) Plaintiff claims that he made one further payment on the mortgage in July 2014 at BNY's instruction but was informed in September 2014 that he had "failed the verbal repayment plan and didn't need to send the mortgage payment anymore." (*Id.* ¶¶ 34-36.) Plaintiff now alleges that BNY intended to cause Plaintiff's eventual default on the mortgage by imposing the verbal repayment plan on him, "deliberately delay[ing]" notices of late payment, and giving "confusing and varying" instructions to him in the process. (*Id.* ¶¶ 37-46.)

In March 2017, U.S. Bank commenced a foreclosure proceeding against Plaintiff in New Jersey Superior Court—a suit which Plaintiff characterizes as "invalid."[6] (*Id.* ¶ 47, 113.) Plaintiff applied for a loan modification in November 2017 and was denied by TIAA because Wells Fargo did not grant "an Investor Approval." (*Id.* ¶¶ 48-50.) Plaintiff further alleges that TIAA's appraiser intentionally prepared a false property appraisal report by "adopt[ing] completely different properties as comparable sales" in order to deflate the value of the Totowa property and "assure that Plaintiff would not qualify" for a loan modification during his seven total attempts at obtaining one. (*Id.* ¶¶ 51-62, 65.) Plaintiff claims that Wells Fargo also "knowingly and willfully" participated in this scheme to prevent Plaintiff from receiving a loan modification by denying his applications for one based on the "fraudulent" appraisal report. (*Id.* ¶¶ 61-66.) Plaintiff asserts that "Wells Fargo is thus liable for the actions of the appraiser." (*Id.* ¶ 63.)

Further, Plaintiff alleges that Wells Fargo denied his loan modification application in December 2017, and his subsequent appeal of that denial, based

---

[6]     Plaintiff filed a counterclaim in the state case alleging that BNY inflated the value of the appraisal, affecting the terms of Plaintiff's loan, in violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1. (DE 63-6 at 4–6.) In February 2018, the court dismissed the counterclaim with prejudice. (DE 63-4 at 2–3.)

on an incorrect calculation of the attorneys' fees associated with foreclosure. (*Id.* ¶¶ 75-83.) Plaintiff's next three applications, submitted in March, April, and July 2018, were denied because Wells Fargo allegedly relied on a miscalculation of Plaintiff's income and on the false appraisal report. (*Id.* ¶¶ 84-91.) Plaintiff's sixth and seventh loan modification applications were denied by U.S. Bank in October 2018 and February 2019 for failure to submit requested documentation—documentation which Plaintiff alleges was designed for a mortgage refinancing rather than a loan modification.[7] (*Id.* ¶¶ 92-96.) Thus Plaintiff maintains that, in denying Plaintiff's seven loan modification applications, Wells Fargo and U.S. Bank "continually violated" federal regulations governing loss mitigation procedures in foreclosure. (*Id.* ¶ 97 (citing 12 C.F.R. § 1024.41).)

Finally, Plaintiff alleges that U.S. Bank's counsel in the state foreclosure case intentionally failed to serve Plaintiff or other interested parties with the foreclosure complaint, motion for summary judgment, and various other motions and pleadings, rendering those documents invalid. (*Id.* ¶¶ 114-68.) Moreover, Plaintiff alleges that counsel "repeatedly made false statements" to the state court and others representing that proper service had been effected on all interested parties. (*Id.* ¶¶ 118-19, 122-24, 133, 142-48, 151, 158, 167-69.) As such, Plaintiff accuses U.S. Bank's counsel of committing negligence, "intentional fraud," and violations of state consumer protection laws "in order to further his own legal and financial gain," (*id.* ¶¶ 128, 149, 152, 158-60, 164, 166, 169-74)—conduct that he claims is attributable to U.S. Bank, (*id.* ¶ 175.)

In May 2018, the state court granted summary judgment in favor of U.S. Bank in the foreclosure case and referred the case to the Office of Foreclosure.

---

[7]     Plaintiff also alleges that the assignment of the mortgage to U.S. Bank, and Wells Fargo before it, was unlawful and invalid because there was a "break in the chain" of title after BNY assigned the mortgage to the trust and erroneously named JPMorgan Chase Bank as servicer. (*Id.* ¶¶ 93, 98-106.) He argues that U.S. Bank lacked standing to pursue the foreclosure action in state court and that the certifications supporting the summary judgment against him in that case are "flat-out lies." (*Id.* ¶¶ 107-13.)

(DE 63-4 at 4-5.) Motion practice nevertheless continued, and the foreclosure case remains pending. (*See* Defs. MTD at 1, 10 n.2.)

In October 2020, Mo filed this federal-court action. (DE 1.) In the currently operative Second Amended Complaint, he asserts claims for (1) breach of contract; (2) breach of contract for third party beneficiary; (3) negligence; (4) violation of the Real Estate Settlement Procedures Act ("RESPA"), as implemented by 12 C.F.R. § 1024.41; (5) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 to 1692p; (6) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 to 1616; (7) violation of the NJCFA; N.J. Stat. Ann. § 56:8-1; (8) violation of the Unfair Claims Settlement Practices Act ("UCSPA"), N.J. Stat. Ann. §§ 17:29B-1 to -19; (9) violation of N.J. Ct. R. 4:4-3(a), governing the service of a summons and complaint in New Jersey state court; (10) violation of the Real Estate Appraisers Act, as implemented by N.J. Admin. Code § 13:40A-6.1; and (11) initiating a "wrongful foreclosure action." (2AC ¶¶ 176–347.) Defendants Wells Fargo, U.S. Bank, and TIAA move to dismiss, arguing that Plaintiff has failed to state a claim under Fed. R. Civ. Pro. 12(b)(6) and has failed to rectify the deficiencies of his prior complaints. (Defs. MTD at 4-5.) JPMorgan Chase Bank joins in their motion and moves to dismiss on the additional ground that it is improperly named and was not at all involved in the mortgage loan at issue. (JPMorgan MTD at 5-6.)

## II.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of [his] 'entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Servs.*, Inc., 542 F.3d 59, 64 (3d Cir.2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678. Stated differently, in reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Further, for claims sounding in fraud, Fed. R. Civ. P. 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) thus requires a complaint to state the circumstances of an alleged fraud with "sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation marks omitted).

## III.    DISCUSSION

### A. Breach of Contract Claims (Counts 1 & 2)

Plaintiff alleges that Wells Fargo and U.S. Bank breached the mortgage and loan modification agreements with Plaintiff (Count 1) and that Wells Fargo breached "agreements" between Wells Fargo and "federal government agencies

and/or government sponsored enterprises" to provide mortgage-holders "in default with loss mitigation options," violating Plaintiff's rights as a third party beneficiary (Count 2). (2AC ¶¶ 176-200.)

To state a New Jersey breach of contract claim, Plaintiff's complaint must plead "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Atl. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (citation omitted). "A plaintiff must identify the specific contract or provision that was allegedly breached." *Barker v. Our Lady of Mt. Carmel Sch.*, Civ. No. 12-4308, 2016 WL 4571388, at *15 (D.N.J. Sept. 1, 2016). In comparison, a third-party beneficiary claim requires Plaintiff's complaint to plausibly allege that Defendants "intended [Plaintiff] to benefit from the existence of the of the contract," rather than merely benefiting Plaintiff "as an unintended incident of the agreement." *Ross v. Lowitz*, 222 N.J. 494, 513, 120 A.3d 178, 189–90 (2015) (quoting *Broadway Maint. Corp. v. Rutgers, State Univ.*, 90 N.J. 253, 259, 447 A.2d 906, 909 (1982)). "The contractual intent to recognize a right to performance in the third person is the key." *Broadway*, 447 A.2d at 909; *see also Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503, 510 (3d Cir. 1981) ("New Jersey courts have been hesitant to imply a third-party beneficiary obligation without an explicit indication by the parties that . . . [the third party] will have a direct claim under the contract."). Courts will glean that intent "from an examination of the contract and a consideration of the circumstances." *Rieder Cmtys., Inc. v. Township of N. Brunswick*, 227 N.J. Super. 214, 222, 546 A.2d 563, 597 (1988).

As to Count 1, Plaintiff claims that Wells Fargo violated the terms of his mortgage, state law, and federal regulations by failing to provide him adequate notice of his default or a loan modification (2AC ¶¶ 180-83), while U.S. Bank violated his loan modification agreement by "unilaterally imposing" a verbal repayment plan and demanding payments in "a confusing and varying manner"

(*id.* ¶¶ 188-89.) There is—just—a potential contract claim lurking within these scattershot allegations, and I will give this pro se plaintiff the opportunity to develop it. As this claim goes forward, however, the plaintiff will have to provide evidence of a contract claim's essential elements: offer and acceptance, a reasonably specific description of the terms of the agreement, failure to perform by Wells Fargo or U.S. Bank, and a breach that caused plaintiff's damages.[8] *See Mid-Atl. Salt*, 964 F.3d at 226. The precise contours of the alleged "verbal repayment plan" will have to be fleshed out in discovery. While Plaintiff provides an extensive list of claimed damages (2AC ¶ 199), he must take on the burden of demonstrating that these damages were caused by Defendants' conduct rather than by Plaintiff's own failure to make mortgage payments, his ineligibility for a loan modification, or his failure to prevail in the state foreclosure proceeding.

The motion to dismiss is denied as to Count 1.

As to Count 2, Plaintiff specifies neither the contracts nor the counterparties at issue, alleging only that Wells Fargo had undefined "agreements" with "federal government agencies and/or government sponsored enterprises." (2AC ¶¶ 195-97.) However, this description would seem to imply that all statutes and regulations are "contracts" between the banks and the government, which they are not. It appears to restyle alleged statutory and regulatory violations as contract claims, and then piggy-back a claim that Plaintiff is a third-party beneficiary of those "contracts." There are not sufficient allegations that a contract existed or that a breach occurred, let alone any allegation that Plaintiff had a legally enforceable right as between those third parties. *See Broadway*, 447 A.2d at 909; *Dravo*, 655 F.2d at 510.

Count 2 will therefore be dismissed.

---

[8]   Moreover, Plaintiff's allegation that U.S. Bank imposed the verbal temporary repayment plan appears to contradict other allegations in his Second Amended Complaint that the verbal agreement originated with either BNY or TIAA. (See 2AC 5, 23-37, 249.)

## B. Negligence

Plaintiff claims that Defendants are liable for negligence because (1) Wells Fargo breached its duty "to exercise reasonable diligence and care in informing Plaintiff of his mortgage loan modification eligibility and mitigating any resulting financial hardship" (2AC ¶¶ 205-09); and (2) U.S. Bank's counsel breached his duty "to act with reasonable prudence, caution, and care to avoid and ensure against causing or creating an unreasonable risk of or actual harm to any party in the foreclosure action including Plaintiff," (*id.* ¶¶ 211-16.)

To make out a claim for negligence, a plaintiff must plausibly plead "(1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty of care; and (3) that the defendant's breach proximately caused the plaintiff's injury." *Collick v. William Paterson Univ.*, No. 16-471 (KM) (JBC), 2016 WL 6824374, at *26 (D.N.J. Nov. 17, 2016) (citing *Boos v. Nichtberger,* 2013 WL 5566694, *4 (N.J. Super. Ct. App. Div. Oct. 10, 2013); *see also Endre v. Arnold*, 300 N.J. Super. 136, 142, 692 A.2d 97, 100 (App. Div. 1997) (stating that these three elements "are essential for the existence of a cause of action in negligence"). Here, Plaintiff has pled none of these elements with sufficient specificity for his claim to survive a motion to dismiss.

Plaintiff offers only bare allegations that Defendants owed him a common law duty to exercise reasonable diligence and care in administering Plaintiff's loan modification requests or in litigating the foreclosure of the Totowa property—allegations that are, without more, legal conclusions that I need not accept. They amount to an allegation that whatever contractual or regulatory breaches occurred must have been negligent. But those breaches themselves are the source of Plaintiff's rights, whatever they are. While Defendants may be bound to "a more general duty to act in a manner that d[oes] not create a foreseeable risk of harm to others," including Plaintiff, the conduct cited by Plaintiff cannot be said to qualify as a breach of such duty. The appraisal of the Totowa property, Wells Fargo's refusal to grant any of Plaintiff's seven loan modification applications, and the conduct of U.S. Bank's counsel appear to

have been aimed at fulfilling the terms of Plaintiff's mortgage, either by finding a feasible payment plan or by foreclosure. The damages that Plaintiff now claims appear more as the natural and unfortunate consequences of the state foreclosure proceedings. Such proceedings cannot be undone through the filing of a state negligence claim in federal court.

For these reasons, Count 3 will be dismissed.

## C. RESPA

RESPA is "a consumer protection statute that regulates the real estate settlement process," *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010), and permits a private right of action for a borrower to enforce RESPA and its associated regulations against a mortgage servicer, *see Lloyd v. New Jersey Hous. & Mortg. Fin. Agency*, 845 F. App'x 139, 144 (3d Cir. 2021) (citing 12 C.F.R. § 1024.41(a) and 12 U.S.C. § 2605(f)). Plaintiff specifically alleges that Defendants violated 12 C.F.R. § 1024.41(b), a regulation implementing RESPA that requires mortgage servicers to promptly review "loss mitigation applications," to provide notice about whether such applications are complete, and to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1)-(2). But a plaintiff must plead that a RESPA violation had a "causal link" with actual damages. *Lloyd*, 845 F. App'x at 144; *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016); *see also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (noting that "damages are an essential element in pleading a RESPA claim" and requiring a "causal link" between alleged violation and damages).

Plaintiff claims that Wells Fargo's use of a "falsely prepared" appraisal report to deny Plaintiff's loss mitigation applications violated Wells Fargo's regulatory obligation to exercise reasonable diligence. Thus, for example, Wells Fargo allegedly obtained an appraisal report that used comparable properties that were "completely different" than the Totowa property. These allegations, I find, state a RESPA claim.

10

Plaintiff will still need to demonstrate that the appraisal was something more than just a disputed judgment call, that the report was the reason Wells Fargo denied Plaintiff's loan modification requests, or that it was the cause of Plaintiff's default and the ensuing foreclosure action—difficult burdens all. *See* 12 C.F.R. § 1024.41(a) ("Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option.").

The motion to dismiss Count 4, however, is denied.

### D. Fair Debt Collection Practices Act & Truth in Lending Act

In Count 5, Plaintiff alleges that Wells Fargo, by incorrectly calculating attorney fees associated with Plaintiff's loan modification applications, informing Plaintiff he was ineligible for a loan modification, and by rejecting his applications, violated the FDCPA's prohibitions against using a "false, deceptive, or misleading representation" or "unfair or unconscionable means" in order to collect a debt.[9] (2AC ¶¶ 232-33 (citing 15 U.S.C. § 1692e and 15 U.S.C. § 1692f).) In Count 6, Plaintiff claims that that U.S. Bank violated TILA in denying Plaintiff's requested loan modifications based on the "unreasonable" conclusion that foreclosure would recover a greater proportion of outstanding mortgage debt than the loan modification. (*id.* ¶¶ 241-42 (citing 15 U.S.C. § 1639a(a)(2)(C).)

The FDCPA is "geared towards eliminating abusive practices by debt collectors" and, to effect that goal, "creates a private right of action against debt collectors who violate its provisions." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018) (citing 15 U.S.C. § 1692k). "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

---

[9]    Plaintiff also alleges without explanation that U.S. Bank is "severally liable" for this conduct as well. (2AC ¶ 234.)

Plaintiff's Second Amended Complaint offers only bare, conclusory allegations that these elements are present. In particular, Plaintiff alleges that Wells Fargo meets the definition of a debt collector under 15 U.S.C.A. § 1692a(6) (defining "debt collector" as "any person" who either "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"). Yet the Supreme Court in *Henson v. Santander Consumer USA Inc.* observed that the plain language of § 1692a(6) "seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." 137 S. Ct. 1718, 1721–22 (2017). Indeed, it continued:

> Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for "another." And given that, it would seem a debt purchaser like Santander may indeed collect debts for its own account without triggering the statutory definition in dispute[.]"

> *Id.* 1721–22 (2017).

Indeed, though Plaintiff's Second Amended Complaint states that Wells Fargo was the owner of Plaintiff's mortgage during loss mitigation (2AC ¶ 49), it does not provide any detail that would allow me to conclude either that the "principal purpose" of Wells Fargo's business is debt collection or that Wells Fargo "regularly collects or attempts to collect" those debts "owed or due . . . another," 15 U.S.C.A. § 1692a(6). This deficiency, already fatal to Plaintiff's FDCPA claim, is only magnified by Plaintiff's failure to plead the remaining elements of his claim with anything approaching the requisite specificity. *See Twombly*, 550 U.S. at 555 (requiring a complaint to plead more than "a formulaic recitation of the elements of a cause of action"); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that on a motion to dismiss, courts

12

"are not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiff's TILA claim is even less clearly pleaded. Initially, I note that the substance of Plaintiff's TILA claim falls short of *Twombly/Iqbal* pleadings standards, but I rest my decision to dismiss it on a narrower ground. Though exceptions, albeit inapplicable ones, exist to this rule, a TILA claim must generally be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Even assuming U.S. Bank violated TILA in denying Plaintiff's loan modification applications, its last denial of such an application was in February 2019. Plaintiff initiated this instant action in October 2020, approximately 20 months later. Thus, Plaintiff's TILA claim, whatever else its faults, is time-barred.

For these reasons, Counts 5 and 6 will be dismissed.

### E. New Jersey Consumer Fraud Act

Plaintiff alleges that TIAA's "unilateral" imposition of a verbal temporary repayment plan and its "confusing and varying" demands for payment pursuant to that plan constituted a violation of the NJFCA. (2AC ¶¶ 246-49.) Moreover, he claims that Wells Fargo also violated the NJFCA by relying on a "falsely prepared" appraisal report and an incorrect calculation of his income to deny his applications for a loan modification. (*Id.* ¶¶ 251-62.)

The NJCFA is a consumer-protection statute prohibiting enumerated unlawful practices "in connection with the sale or advertisement of any merchandise or real estate." *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013). "To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citation omitted). An "unlawful practice" under the NJFCA is:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in

13

connection with the sale or advertisement of any merchandise or
real estate.

N.J. Stat. Ann. § 56:8–2. "Unlawful practices fall into three general categories:
affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507
F.3d at 202 (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J.
1994)). Moreover, a complaint must plead that, as a result of a defendant's
unlawful practice, the plaintiff "has suffer[ed] a definite, certain and
measurable loss, rather than one that is merely theoretical." *Payan v.
GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)
(alteration in original) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741,
749 (N.J. 2009).

Here, Plaintiff's Second Amended Complaint fails to plead the elements of
an NJCFA claim with sufficient specificity to show that he is entitled to relief.
Even granting Plaintiff every favorable inference, *see Phillips*, 515 F.3d at 231,
Plaintiff has not shown that TIAA's temporary repayment plan or Wells Fargo's
reliance on a flawed appraisal report or faulty software for calculating income
constitute an "unconscionable commercial practice" within the meaning of the
statute, *see D'Agostino*, 78 A.3d at 540 ("a simple breach of warranty or breach
of contract is not per se unconscionable."); *Cox*, 647 A.2d at 462 (noting that
an NJFCA claim requires "substantial aggravating circumstances [to] be
present in addition to the breach").[10] Further, despite Plaintiff's amendments,
his Second Amended Complaint still fails to show that TIAA's and Wells Fargo's
conduct caused him "definite, certain, and measurable loss." *Payan*, 681 F.
Supp. 2d at 572. Indeed, Plaintiff states that his damages all stem from his
inability to obtain a loan modification yet has not demonstrated that he had a
legal entitlement to one, let alone one that was assured to prevent his default.

For these reasons, Count 7 will be dismissed.

---

[10]     The Second Amended Complaint pleads affirmative acts, rather than omissions,
as the potential basis for Defendants' liability. *See Cox*, 647 A.2d 454, 462-63.

### F. Plaintiff's Remaining Claims

In the remaining Counts of Plaintiff's complaint, he claims that Defendants engaged in unfair competition and unfair, deceptive practices in violation of the Unfair Claims Settlement Practices Act ("UCSPA"), N.J. Stat. Ann. §§ 17:29B-1 to 17:29B-19, improperly served the state foreclosure pleadings under N.J. Ct. R. 4:4-3(a), failed to comply with the Uniform Standards of Professional Appraisal Practice as required under N.J. Admin. Code 13:40A-6.1, and initiated a foreclosure action in violation of their contract with Plaintiff.

Without delving much into its merits, I perceive that Plaintiff's claim under the UCSPA is clearly deficient. The statute cited, N.J. Stat. Ann. § 17:29B-4, explicitly applies to "unfair methods of competition and unfair and deceptive acts or practices *in the business of insurance*," (emphasis added), not mortgage lending. Moreover, the UCSPA does not provide for a private cause of action, rendering Plaintiff's claim invalid. *See Carevel, LLC v. Aspen Am. Ins. Co.*, No. 2:13-CV-7581 (WHW), 2016 WL 6775647, at *5 (D.N.J. Nov. 15, 2016); *Pierzga v. Ohio Cas. Grp. of Ins. Companies*, 208 N.J. Super. 40, 47, 504 A.2d 1200, 1204 (App. Div. 1986).

As for violation of state service of process rules, Plaintiff fails to establish that there is a private cause of action, federal or state. The alleged violation of Uniform Standards of Professional Appraisal Practice likewise do not give rise to a private federal cause of action, even if it might constitute professional misconduct on the part of the appraiser. *See* N.J. Admin. Code § 13:40A-6.1(b). Plaintiff's last claim, for "wrongful foreclosure," appears to be no more than a restatement of his earlier breach of contract claims. At any rate, he will have no claim unless and until the foreclosure has been found to be wrongful, which thus far has not occurred.

For these reasons, Counts 8, 9, 10, and 11 will be dismissed.

### G. Defendant's Requests to File a Surreply and for Discovery

Finally, I turn to Plaintiff's request to file a sur-reply based on "newly discovered claims and arguments against Defendants" and for discovery pursuant to Fed. R. Civ. P. 56(d). (DE 71, 77, 78, 80, 81, 82, 84.) "Newly discovered claims" cannot be inserted into a case via a brief. No sufficient reason is given for failure to assert supplemental "arguments" earlier. I therefore exercise my discretion to deny the application(s) to file a surreply or surreplies. The operative complaint is the Second Amended Complaint, and I have focused my attention on the sufficiency of the allegations in that Complaint, as is proper on a motion to dismiss. Defendants cannot be asked to aim their arguments at a constantly moving target. That said, I have surveyed Plaintiff's submissions, which do not alter my above conclusions.

Plaintiff, in the guise of a surreply, has submitted what amounts to a motion for summary judgment, with voluminous exhibits. A surreply is not the proper vehicle for such contentions. Plaintiff has also belatedly requested discovery and a delay of his deadline to respond to the motion to dismiss. He has already responded to that motion, however. His objection to the Magistrate Judge's suspension of discovery while the motion to dismiss remains pending is denied as moot.

The case will proceed in the usual course, based on the non-dismissed claims, with discovery as appropriate under the supervision of the able Magistrate Judge.

### H. JPMorgan's Motion to Dismiss

As previously mentioned, the prior assignment of Plaintiff's mortgage erroneously named JPMorgan Chase Bank ("JPMorgan") as the mortgage servicer, an error that was corrected in 2016. (JPMorgan MTD at 3; Defs. MTD at 2-3.) Plaintiff neither addresses JPMorgan's argument that it has been erroneously named in this action, (JPMorgan MTD at 2-3), nor articulates why he has named JPMorgan as a defendant in this action.

16

As it appears that JPMorgan is not a proper defendant, I will grant the motion to dismiss Plaintiff's Second Amended Complaint as to JPMorgan.

## IV.   CONCLUSION

A word in closing. I have been indulgent with a pro se litigant who is pursuing a scorched-earth policy of delay in multiple forums to stave off foreclosure. I have given his briefs and his complaint, which are verbose but non-specific at key points, a liberal reading. Plaintiff is cautioned that he must file motions, and respond to motions, in the prescribed format, without extraneous submissions and within the prescribed page limits, or risk having his submissions disregarded.

For the reasons set forth above, the motions to dismiss are **GRANTED in part** and **DENIED in part.**

A separate order will issue.

Dated: February 15, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**